**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**BRYSON CITY DIVISION**

**CIVIL CASE NO. 2:09cv041**

| | | |
|---|---|---|
| **TRACY R. DEVECKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary

Judgment [Doc. 8] and the Defendant's Motion for Judgment on the Pleadings

[Doc. 10].

I.     **PROCEDURAL HISTORY**

Plaintiff filed applications for a period of disability, Disability Insurance

Benefits, and Supplemental Security Income payments on March 31, 2005,

alleging that she has been disabled since August 20, 2004 due to chronic

back pain which radiates down her leg, in addition to depression and anxiety.

[Transcript ("T.") 64, 69, 92].  Plaintiff's claims were denied initially and on

reconsideration.  [T. 49-52, 45-7].  A hearing was held before Administrative

Law Judge (hereinafter, "ALJ") Gregory Wilson on June 30, 2008, at which Plaintiff, who was represented by counsel, appeared and testified. [T. 394-421]. On September 17, 2008, the ALJ issued a decision denying the Plaintiff benefits. [T. 12-23]. The Appeals Council considered additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 3-6]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than

creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV.    FACTS AS STATED IN THE RECORD

Plaintiff was 44 years old at the time of the ALJ's hearing. [T. 64, 394]. The Plaintiff completed the eighth grade. [T. 395]. Her past relevant work includes work as a boat detailer, an auto parts delivery driver, and cashier. [T. 395]. She stopped working after a workplace injury in July 2004, for which she received unemployment and workers compensation benefits. [T. 395, 398].

The medical evidence of record reveals that the Plaintiff has a history of chronic lower back pain. The Plaintiff underwent lumbar surgery in 2000. On July 30, 2004, she reinjured her lower back falling from a ladder at work. An examination immediately following this accident showed tenderness and

decreased range of motion in the lumbar spine area. Her strength, sensation, and reflexes were normal and intact. The Plaintiff was able to walk and get up from a seated position. [T. 356]. An MRI scan of the lumbar spine performed on August 3, 2004 showed a disc herniation at L5-S1. [T. 338].

The Plaintiff was examined by Richard D. Loew, D.O., on August 9, 2004. At that time, Dr. Loew noted that the Plaintiff was ambulatory into the office and was in no distress. A straight leg raise test (Lasegue test) was performed, showing pain on the left side at 90 degrees flexion while seated (i.e. "positive straight leg raising on left"), but was negative on the right side. Her deep tendon reflexes were equal and symmetric. Dr. Loew restricted the Plaintiff to light duty with no repetitive bending, no climbing ladders, and no lifting over ten pounds. [T. 338].

During an August 19, 2004 visit to Dr. Loew, the Plaintiff reported that "she [was] unable to perform her light duty status," as she was unable to sit for more than a few minutes at a time without changing positions. She further reported that after four or five hours, the pain became intolerable. Examination again showed positive straight leg raising on the left, and that deep tendon reflexes were equal. Dr. Loew ordered the Plaintiff to be off work pending a neurological evaluation. [T. 337].

Neurologist Heldo Gomez, Jr. M.D. evaluated the Plaintiff on September 20, 2004 for back and leg pain resulting from her July 2004 fall. Upon examination, Dr. Gomez noted that the Plaintiff had an antalgic gait and that straight leg raising was positive on the left. Her motor strength was five on a five step scale (5/5) on the right and 4/5 on the left. Her deep tendon reflexes were equal and symmetric. Dr. Gomez opined that Plaintiff was a possible candidate for percutaneous discectomy. Dr. Gomez decided to keep Plaintiff out of work. [T. 331-2].

On August 30, 2005, Dr. Raymond Tidman performed a physical evaluation of the Plaintiff for Disability Determination Services (DDS). Plaintiff reported daily pain in her back that was worse with any activity greater than ten minutes and that improved with a change of position and medication. She reported being able to feed, bathe, and dress herself, handle her own money, and drive a car. Objectively, Dr. Tidman noted that Plaintiff had diminished range of motion in her back and left hip, and a stable but painful gait. He further noted that her left and right thoracolumbar spine and bilateral hip flexion ranges of motion were somewhat limited. Dr. Tidman's impression was chronic back pain, status post surgery. [T. 326-8].

Dr. Laurence So examined Plaintiff for DDS on September 9, 2005. [T. 320-3]. She reported to him that she had pain which caused problems with

walking, numbness and tingling in the left leg, and anxiety disorder. Objectively, Dr. So noted that she did not appear to be in distress, showed good range of motion in both legs, and had positive straight leg raising on the left. He further noted that she had a antalgic gait and was unable to walk heel-toe. All range of motion was normal. Neurologically, he noted weakness of 4/5 in the left leg compared to 5/5 in the right leg. Dr. So's impression was low back pain with radiculopathy and noticeable weakness of the left leg, and anxiety disorder.

On September 26, 2005, Dr. Val Sokolov performed a physical Residual Functional Capacity (RFC) assessment for DDS. The primary diagnosis was back pain, and the secondary diagnoses were anxiety and depression, along with psoriasis. Without examining Plaintiff, Dr. Sokolov assessed Plaintiff at a medium work capacity, finding that she could lift 50 pounds occasionally and 25 pounds frequently, sit and stand six of eight hours, and only occasionally kneel. [T. 281-88].

The Plaintiff also sought treatment for her back pain from John Tucker, P.A. ("P.A. Tucker") and Matthew Molison, D.O. The transcript contains records of P.A. Tucker for regular monthly visits from June 2005 to November 2007. [T. 205-48, 261-75]. On June 24, 2005, Plaintiff had her first appointment with P.A. Tucker, complaining of terrific pain, stiffness, and

poorly controlled anxiety. Upon examination, P.A. Tucker noted that Plaintiff appeared to be in pain, and had poor range of motion but negative straight leg raising and other objective testing. [T. 261-63]. By July 2005, Plaintiff reported diminution of her anxiety with Effexor XR, with no side effects. She displayed no pain. [T. 263]. On September 19, 2005, Plaintiff rated her recurrent low back pain at eight on a ten point scale. She reported using four to five Percocets per day. [T. 266]. On October 5, 2005, Plaintiff rated her pain at two to three on a ten point scale, down from six[1] at her last visit. She appeared to be in little pain, had no tenderness and good range of motion, but did have positive straight leg raising on the left. [T. 266-67].

On November 30, 2005, Plaintiff asked to be switched to Oxycontin, which she had used previously. She reported using as many as five Percocets per day. [T. 271]. On November 1, 2005, Plaintiff reported that her pain was four to five on a ten point scale and was managed by her present medications. [T. 268-69].

On November 30, 2005, P.A. Tucker offered to refer Plaintiff to a chronic pain specialist, but she declined. [T. 270]. On February 28, 2006, Plaintiff reported that she was having to take too many Percocets to supress her pain,

---

[1] The record from the September 19 visit reflects Plaintiff having reported her pain as an eight rather than a six. [T. 266]. Why the record of the next visit then recounts Plaintiff having reported her pain level on September 19 as a six is not explained. [T. 267]. One or the other is obviously in error.

which was typically six on a ten point scale (6/10). Oxycontin was added to her medications. [T. 241]. By April 4, 2006, she reported needing less Percocet, and her anxiety symptoms were stable. All objective tests on her back were negative. [T. 237]. By July 2006, P.A. Tucker discontinued Plaintiff's prescription for Percocet. At the time Plaintiff did not appear to be in acute pain. [T. 231].

On September 18, 2006, the Plaintiff reported experiencing pain in the right hip and thigh in addition to the usual left leg and back pain. P.A. Tucker noted that she appeared to be in pain and had localized tenderness at L4-5. There was positive bilateral straight leg raising. A local injection of Kenalog 40mg was provided. [T. 229]. On September 27, 2006, the Plaintiff reported that her pain was not well managed, but she continued to be reluctant to have surgery. Objectively, there was no spasm or other positive test result noted. [T. 227]. On December 1, 2006, Plaintiff reported worsening back pain, but she described it as averaging a three on a ten point scale, and she did not appear to be in pain. Right straight leg raising was positive, and she received another Kenalog injection. [T. 224].

On May 15, 2007, the Plaintiff complained of worsening back pain, with right leg pain and weakness, following an injury a few days prior. The straight leg raising again showed pain on her right side. An MRI was ordered. [T.

218].  On May 22, 2007, Plaintiff reported that her pain was not managed. Straight leg raising was again positive bilaterally.  [T. 214].  Notes from a June 14, 2007 examination indicate that Plaintiff had completed some physical therapy and that her pain was improving.  Other than some soft tissue tenderness in the shoulder on left, objective testing was negative.  [T. 214].

A comprehensive evaluation on July 19, 2007 showed normal psychiatric conditions and stable symptoms, and a negative neurological exam.  Plaintiff's back and musculoskeletal exams were normal.  [T. 211-3].

A Lumbar Spine Residual Functional Capacity Questionnaire was completed by P.A. Tucker on December 21, 2007.  [T. 198-203].  In this Questionnaire, P.A. Tucker noted that an MRI in May 2007 indicated a L4-5 disc prolapse without neural/foraminal encroachment.  He further noted that Plaintiff has a history of chronic low back pain, radiating pain in the left hip and thigh, and a perception of weakness.  P.A. Tucker noted, however, that Plaintiff has only mild to moderate reduction in range of motion.  While straight leg raising was noted to be positive bilaterally, no other positive objective signs were noted.  P.A. Tucker opined that Plaintiff's symptoms would interfere with her concentration and attention frequently, and that the side effects of her pain medications would cause dizziness, sleepiness, and

depression. He further opined that Plaintiff could walk two blocks, sit and stand fifteen minutes continuously, and sit and stand a total of four hours per day with normal breaks. He opined that she needed to change positions at will, and to take unscheduled, 10-15 minute breaks every two hours. With a sedentary job, her legs would have to be elevated 50% of the time. P.A. Tucker further opined that Plaintiff could never lift more than ten pounds, was limited to bending 20% of the time, and would miss work more than three times per month. [Id.].

The Plaintiff also has a history of panic attacks, anxiety, and depression. Dr. Jim Miller performed a psychological evaluation for DDS on October 15, 2005. [T. 313-17]. He noted that the Plaintiff had physical discomfort with walking. Plaintiff related a history of panic attacks for the past eighteen years. She reported that she currently had panic attacks every other day, even with medication. She further reported that once a week she is too depressed to get out of bed. She stated that she does not want to go out as often due to depression, and that she overeats due to anxiety.

Dr. Miller noted that Plaintiff's speech had a bit of a driven quality. He further noted that she was easy to understand, and her thoughts were coherent. She reported poor short term memory, but tested adequately. Her intelligence was noted as probably toward the high end of borderline. Dr.

Miller concluded she had problems with attention and focus, had less than average ability to tolerate pressure, and was capable of managing her affairs. He diagnosed her with panic disorder without agoraphobia, dysthymia, and mood disorder associated with physical trauma.  [Id.].

On October 28, 2005, Dr. VanderPlate performed a Psychiatric Review Technique.  [T. 292-305].  The worst limitations he found were moderate limitations in social functioning and concentration, persistence or pace.  He further noted that Plaintiff appeared to be fully credible.

Dr. VanderPlate then performed a mental Residual Functional Capacity assessment.  [T. 307-10].  No marked limitations were found, and moderate limitations were found in five areas.  He noted she could perform simple tasks, sustain attention for two hours, understand simple directions, and would be somewhat limited in dealing with stress and the public.

At the ALJ hearing, the Plaintiff testified that she lives with her husband and 17-year-old daughter. [T. 397].  She reported that getting out of bed and walking causes extreme pain.  [T. 402-03].  Plaintiff testified that daily activities are now harder for her, and that she requires the help of her daughter to complete some chores.  She avoids lifting anything over ten pounds, as well as bending or standing for more than thirty minutes at a time.

She reported that she lies down approximately one to two hours per day.  [T. 403-04].

Plaintiff testified that her medications make it hard to concentrate and remember things.  [T. 404].  She also reported that her pain medications have lessened in their effectiveness over time.  [T. 405].  Plaintiff testified that pain limits her sleep such that she often gets up in the middle of the night.  [T. 405].  She testified that she has no hobbies or interests.  [T. 405-06].

Plaintiff testified that she has panic attack symptoms, which she described as sweating, hyperventilation, and feeling as if she is having a heart attack.  [T. 406].  On questioning by the ALJ, she indicated that she sometimes cooks, does dishes, folds clothes, does not iron, sweeps and dusts some, mops and vaccuums, and cleans the bathroom and kitchen.  She does no home or yard maintenance.  She drives three times a week, does not go to church or attend any groups, and sometimes sees friends and family.  [T. 407-08].

Plaintiff's husband testified that since 2004 she has become unable to do "even [ ] simple things" and is in constant pain.  Getting out of the chair, having to bend over, bringing in heavier groceries and carrying things up steps, and reaching to the back of the clothes dryer and under cabinets are some of the things she can no longer do.  [T. 411-12].  He testified that she

has become "very mentally unstable," expressing hopelessness, drifting out of attention to conversation, and having to be reminded via notes and phone calls to attend to important matters. [T. 412-13]. He further reported that she often has problems with her equilibrium. [T. 413].

Vocational expert (hereinafter "VE") Mark Leaptrot also testified at the ALJ hearing. After characterizing Plaintiff's past relevant work, he answered a series of hypothetical questions posed by the ALJ. Based on the RFC described by the ALJ, the VE identified work available in the national economy that Plaintiff could perform. [T. 416-19].

## V.   THE ALJ'S DECISION

On September 17, 2008, the ALJ issued a decision denying the Plaintiff's claim. [T. 12-23]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2009 and that she had not engaged in any substantial gainful activity since her alleged onset date of August 20, 2004. [T. 14]. The ALJ then found Plaintiff's lumbar disc herniation, depression and anxiety to be severe impairments. [T. 14]. The ALJ concluded, however, that the severe impairments did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [T. 16-18]. The ALJ assessed the Plaintiff's residual functional capacity and determined that the Plaintiff was incapable of performing her prior work. [T.

22].  He found that she remained capable of light work with some prohibitions on climbing, and some limitations on climbing, balancing, stooping, kneeling, crouching and crawling, in non-production work with limited public contact. [T. 18, 18-21].  Citing the testimony of the VE, the ALJ determined that there existed jobs in significant numbers that the Plaintiff could perform.  [T. 22-3]. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date of August 20, 2004 through the date of the ALJ's decision.  [T. 23].

## VI.    DISCUSSION

Plaintiff asserts the following assignments of error: first, that the ALJ erred in his assessment of Plaintiff's pain and credibility; second, that the ALJ erred in his evaluation of the opinion evidence of record; and third, that the ALJ's residual functional capacity (RFC) assessment was not supported by substantial evidence.

### A.    The ALJ's Credibility Assessment

"Assessing the credibility of a claimant's symptoms of pain is a two-step process."  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); SSR 96-7p.

> First, a claimant must establish, by objective medical evidence, the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. ... If a claimant meets this burden,

the ALJ must then evaluate the manner in which the intensity and persistence of these symptoms affect the claimant's ability to work....In so doing, the ALJ must consider not only the claimant's statements about [his] pain, but also 'all the available evidence, including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 594-95 (internal citations omitted). "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

As the ALJ acknowledged, Plaintiff's lumbar disc herniation is a condition that could reasonably be expected to produce the pain and other symptoms alleged. Such a finding constitutes satisfaction of the first prong of the test articulated in Craig. Pittman v. Massanari, 141 F.Supp.2d 601, 610 (W.D.N.C. 2001); Goodwin v. Halter, 140 F.Supp.2d 602, 608 (W.D.N.C. 2001); Fulbright v. Apfel, 114 F.Supp.2d 465, 477 (W.D.N.C. 2000). With respect to the next step of the analysis, the ALJ dismissed Plaintiff's claims of pain, finding that such claims are not supported by the record as a whole. [T. 19].

Plaintiff argues that the ALJ's evaluation of Plaintiff's pain complaints is inconsistent with objective observations about gait and muscle strength that are present in the record.  This argument, however, is without merit.  As the ALJ noted, Plaintiff's muscle strength was frequently found to be normal (5/5).  P.A. Tucker's RFC opinion notes that Plaintiff "perceived," as opposed to actually had, muscle weakness; and the lowest muscle strength recorded by any of her treating physicians was 4/5.  A rating of 4/5 indicates nearly normal strength, and standing alone is not consistent with disability.

While the references in the record to the Plaintiff having a normal gait are less frequent than assessments of Plaintiff's pain or muscle strength, there are sufficient references in the record to her gait to support the ALJ's conclusion that Plaintiff's doctors "consistently" noted her to have a normal gait.  Plaintiff visited one doctor or another at least monthly, and these providers made generally thorough notes about her chronic problems; in this context, the infrequency of references to gait suggests that this was not a significant symptom of her impairments.

Plaintiff also argues that the ALJ improperly singled out one pain rating wherein she reported her pain to be an average of three on a ten point scale.  A review of the record reveals that Plaintiff's pain ratings varied from two to eight, even in ratings given just a few weeks apart.  [T. 224, 235, 241, 266,

267, 269, 359, 360, 369].    While the higher ratings reported suggest

substantial pain on an intermittent basis, the Plaintiff's pain ratings overall do

not support her assertion of an ongoing severity of pain at a persistent,

disabling level.  Additionally, several records note Plaintiff as stating that her

pain was well-managed by her pain medications.  Further, she refused P.A.

Tucker's offer of a referral to a pain management specialist [T. 270], as well

as the opportunity to have back surgery.  [T. 227, 235, 368].  These, too, are

inconsistent with Plaintiff's assertions of disabling pain.  "In considering the

credibility of the claimant's subjective allegations of pain, the ALJ must

consider (factors which include) the extensiveness of the attempts (medical

or nonmedical) to obtain relief...."  McKenney v. Apfel, 38 F.Supp.2d 1249,

1259 (D. Kan. 1999) (citing Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir.

1991)).

For these reasons, the ALJ's conclusions regarding strength, gait, and

Plaintiff's credibility regarding the severity and intensity of her pain are

supported by substantial evidence.

## B.    The ALJ's Evaluation of Opinion Evidence

Plaintiff argues that Drs. Loew's and Gomez's records present opinions

supporting disability and the ALJ attributed insufficient weight to these treating

physician opinions.

Regulations dictate the ALJ's process for evaluating medical source evidence:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (i) Length of the treatment relationship and the frequency of examination. (ii) Nature and extent of the treatment relationship.

20 C.F.R. § 404.1527(d).

The RFC is comprised of findings about Plaintiff's capacity to perform physical and mental work functions. SSR 96-8p. Some accepted medical source's evidence must be the basis of an ALJ's opinion on RFC; the ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)).

In the present case, Plaintiff had a short treating relationship with Dr. Loew, spanning eight appointments over less than two months. The appointments were characterized by him as limited to a "workers' comp evaluation" following her July 2004 workplace accident. [T. 342]. See 20

C.F.R. § 404.1527(d)(2)(ii). Dr. Loew sent her back to light duty work three times during that period, limiting her to lifting no more than ten pounds and prohibiting her from bending or climbing ladders. When Plaintiff, however, reported that she could not tolerate even light duty, Dr. Loew changed her status to "off work." The record of the last appointment indicates that Dr. Loew kept her out of work pending an appointment with a neurosurgeon, and was treating her muscle spasms with Soma. No specific opinion about Plaintiff's impairments and no permanent restrictions were stated in Dr. Loew's records. Given the immediate post-accident timing of Dr. Loew's treatment of Plaintiff and the fact that he referred her to a specialist for management of the injury, Dr. Loew was not in a position to make such assessments. Dr. Loew's records do not suggest that Plaintiff's "off work" status would extend any longer than a temporary healing period, or until she could be evaluated more thoroughly by the neurosurgeon.

Similarly, Dr. Gomez's record of his one appointment with Plaintiff does not state any specific opinion about Plaintiff's impairments. The purpose of the single visit to Dr. Gomez was stated as "review of her radiographic and clinical findings" after her workplace injury, rather than initiation of an ongoing treating relationship. [T. 331]. Even if the Plaintiff were correct that Dr. Gomez's order to "keep her at no-work status" is an opinion about her ability

to work, his one exposure to Plaintiff reflects a snapshot and not the longitudinal picture that would entitle his opinion to controlling or even significant weight under the regulations. See 20 C.F.R. § 404.1527(d)(2)(i) & (ii).

For these reasons, the ALJ's determination that little evidentiary weight should be given to the "off work" status, limitations, and conditions indicated by Dr. Loew's and Gomez's records.

Plaintiff also objects to the ALJ's failure to afford controlling weight to Physician Assistant Tucker's opinion as that of a treating physician. P.A. Tucker had the longest treatment history with Plaintiff, having seen her at least monthly since June 2005. [T. 198, 400]. Only the opinions of "acceptable medical sources" are entitled to controlling weight. See 20 C.F.R. § 404.1527(d) and 416.927(d); SSR 06-03p at *2. Physicians' assistants do not qualify as "acceptable medical sources" under the regulations; instead, they qualify as "other sources," who can offer evidence of impairments and their severity, but are not explicitly entitled to the enhanced evidentiary value enjoyed by treating sources. 20 C.F.R. § 404.1513(d); SSR 06-03p at *3.

Plaintiff appears to interpret the ALJ's statement that "a physician's assistant is not an acceptable medical source" as a wholesale dismissal of

P.A. Tucker's opinion and thus argues that the ALJ committed error in rejecting his opinion solely on that basis. Contrary to Plaintiff's argument, the ALJ properly evaluated P.A. Tucker's proffered opinion to the extent supported by his treatment records. [T. 21]. As noted by the ALJ, Tucker's opinion that Plaintiff is permanently limited to sitting, standing, and walking only four hours per day, must elevate her legs, and would miss more than three days per month due to impairments, is belied by the frequent and significant fluctuations he recorded in her ratings of her pain, by the intermittent indications that her pain and her anxiety were well-managed by medications, and by the paucity of objective signs of impairment and of subjective reports of limitations from her impairments. Furthermore, P.A. Tucker's opinion confirms that Plaintiff has only two[2] out of thirteen suggested positive objective signs, a fact which does not suggest disabling severity. [T. 199].

P.A. Tucker's records from June 2005 through 2007 form a major portion of the entire record. They demonstrate objective findings and limitations that are consistent with the records of Plaintiff's other physicians and evaluators. The details in P.A. Tucker's disability opinion, however, are

---

[2]Those two positive objective signs were mild to moderate reduction in range of motion (of unspecified areas) and positive bilateral straight leg raising.

inconsistent with the content of his own treatment records as well as the record as a whole. Plaintiff points to no specific evidence to the contrary. Even if P.A. Tucker could be deemed an acceptable medical source, the regulations still require an opinion to be, *inter alia*, supportable through detailed medical signs and laboratory findings, and consistent with the record as a whole. 20 C.F.R. § 404.1527(d)(3), (4). Because the ALJ properly determined P.A. Tucker's opinion to be inconsistent with the record as a whole, the Court concludes that the ALJ afforded the appropriate weight to this opinion.

### C.    The ALJ's RFC Assessment

"The R(esidual) F(unctional) C(apacity) assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p at *3. An RFC represents the most that an individual can do despite his or her limitations or restrictions. Id. at *2. "[W]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." Id. at *3. The ALJ must assess a

claimant's residual functional capacity based on all of the relevant evidence of record. 20 C.F.R. § 404.1545(a)(3).

Plaintiff argues that the ALJ's RFC assessment is neither a reasoned evaluation of the evidence nor supported by substantial evidence because it is contrary to the opinions of Drs. Loew and Gomez and P.A. Tucker as well as to Plaintiff's own testimony. This argument is essentially a restatement of the arguments already rejected above in sections A, addressing credibility, and B, addressing opinion evidence, and the Court will not revisit them.

As the Defendant notes, the ALJ's RFC assessment is based upon a combination of physicians' findings, including some of the findings of non-examining physician, Dr. Sokolov. Dr. Sokolov's RFC opinions were based upon the objective medical findings of examining physicians. Though the opinion of Dr. Sokolov, as a non-examining consultative physician, is the "last in line" among physicians' opinions in terms of attributable weight, the ALJ conducted the proper analysis in concluding that Dr. Sokolov's RFC opinion contained reliable information. See 20 C.F.R. § 404.1527(d)(1-6). In his four pages of analysis of all the evidence relating to limitations and work functions, the ALJ recited substantial evidence for his conclusions.

Accordingly, the Court concludes that the ALJ's RFC assessment followed applicable law and is supported by substantial evidence.

## V.    CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability from the date of onset to the date of his decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 8] is **DENIED.**

**IT IS FURTHER ORDERED** that the Defendant's Motion for Judgment on the Pleadings [Doc. 10] is **GRANTED.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 24, 2011

Martin Reidinger
United States District Judge